783 So.2d 520 (2001)
STATE of Louisiana
v.
Jeremiah JOHNSON.
No. 00-KA-1552.
Court of Appeal of Louisiana, Fifth Circuit.
March 28, 2001.
*523 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant D.A., Alison Wallis, Assistant D.A., David Wolff, Assistant D.A., Gretna, LA, for Plaintiff-Appellee.
Kevin V. Boshea, New Orleans, LA, for Defendant-Appellant.
Panel composed of Judges DUFRESNE, GOTHARD and CHEHARDY.
EDWARD A. DUFRESNE, Jr., Chief Judge.
The Jefferson Parish District Attorney filed a bill of information charging defendant, Jeremiah Johnson, with armed robbery of Ashley M. Bayard, a violation of LSA-R.S. 14:64. The matter proceeded to trial before a twelve person jury, at the conclusion of which defendant was found guilty as charged. The trial court sentenced defendant to 20 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
The state subsequently filed a multiple offender bill of information pursuant to the provisions of LSA-R.S. 15:529.1. Following a hearing, the court found defendant to be a second felony offender, vacated the original sentence and then sentenced defendant to imprisonment at hard labor for 49½ years without benefit of probation, suspension or diminution of sentence. It is from this conviction and sentence that defendant now appeals.[1]

FACTS
On January 27, 1998, at approximately 6:00 p.m., defendant, while armed with a gun, robbed Ashley M. Bayard at Mr. Ed's Deli in Metairie, Louisiana. At trial, Ms. Bayard, assistant manager of Mr. Ed's Deli, testified about the details of the offense.[2] According to Ms. Bayard, she was standing by the cash register when a tall black male, later identified as Terrence *524 Dupard, an original co-defendant, walked in. He walked around the restaurant, looked all around the ceiling, and went and checked the side door to see if it was unlocked. The man left and another black male entered. The second black male, subsequently identified as defendant, wore a green jacket and had "wild-looking" hair. Defendant came to the register and put a bag of chips on the counter. Ms. Bayard told him that the total was 54 cents, and he gave her a 20-dollar bill. When she realized that she did not have enough change to give him, she asked if he had 54 cents. Defendant told her that he only had 35 cents. Nonetheless, Ms. Bayard asked him again if he had 54 cents, and he told her that he only had 25 cents.
Defendant then threw 79 cents on the counter. After he did that, she took the 54 cents and gave him the quarter and the 20-dollar bill back. Defendant told her that he had given her a 20-dollar bill, but that she only gave him back a one-dollar bill. She told him that she had given him a 20-dollar bill back. Ms. Bayard and defendant started arguing, and she told him she was not going to give him another $20.00. Defendant then moved his jacket back with his right hand and showed her a gun tucked in the right side of his waistband. Ms. Bayard got scared and gave defendant $20.00. She testified that she would not have given him the money if he had not been armed with a weapon. After she gave defendant the money, he walked out the front door. Ms. Bayard ran outside and yelled to nearby police officers that she had been robbed.[3] The officers came inside the restaurant to obtain a description of the man who had robbed her. They advised the other officers to look for a subject with wild hair and a green jacket who was possibly armed. A few minutes later, while she was inside the restaurant, she saw defendant, accompanied by the officers, walking past the glass windows. Ms. Bayard walked outside and told the officers, "that's him." Defendant was subsequently arrested and charged with armed robbery.
At trial, defendant introduced evidence to prove that although he attempted to con money from several businesses, he was not armed with a gun, and therefore, he should not be guilty of armed robbery. Terrance Dupard, an original co-defendant, testified for the defense that, on January 27, 1998, he was in the company of defendant and Shawn Pichone. Dupard was driving defendant to various businesses in Metairie, so defendant could engage in "petty theft due to trickery or short change." They went to a newsstand, a pizza place, a Smoothie place and Mr. Ed's Deli. Dupard stated that he did not see defendant with a weapon that night, and that he has never seen defendant with a weapon. Shawn Pichone, also an original co-defendant, testified for the defense, and his testimony largely corroborated that of Terrance Dupard.
After listening to the evidence presented, including the conflicting testimony about whether defendant had a gun, the jury found defendant guilty of armed robbery.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assigned error, defendant asserts that the trial court erred in denying his Batson claims. Defendant argues that the state violated his right to a fair trial by using its peremptory challenges to systematically eliminate African *525 Americans from his jury.[4] He specifically refers to jurors Brown, Jones, and Jackson.
Equal protection guarantees that criminal defendants have the right to be tried by a jury selected by nondiscriminatory criteria. U.S.C.A. Const. Amend. 14. It is well established that the use of peremptory challenges based solely on a juror's race is prohibited. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
To prevail on a Batson claim that a prosecutor has used peremptory challenges in a manner violative of the Equal Protection Clause, a defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of a juror's cognizable racial background. In determining whether the defendant has established a prima facie case of discrimination, the trial judge should consider all relevant circumstances, including any pattern of strikes by the prosecutor against minority jurors, and any questions or statements by the prosecutor during voir dire examination or in the exercise of his challenges which may support or refute an inference of purposeful discrimination. Batson v. Kentucky, 476 U.S. at 98, 106 S.Ct. at 1722-1723; State v. Collier, 553 So.2d 815 (1989); State v. Jones, 00-162 (La.App. 5 Cir. 7/25/00), 767 So.2d 862.
If a prima facie case is established, the burden shifts to the prosecutor to articulate a race neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Batson v. Kentucky, 476 U.S. at 96-98, 106 S.Ct. at 1722-1724. The Batson criteria are codified in LSA C.Cr.P. art. 795.
A trial judge's determination on a claim of purposeful discrimination rests largely on credibility determinations, so his findings are entitled to great deference by the reviewing court and will not be overturned absent a finding of manifest error. State v. Toussaint, 98-1214 (La. App. 5 Cir. 5/19/99), 734 So.2d 961, writ denied, 99-1789 (La.11/24/99), 750 So.2d 980.
In the present case, during the course of voir dire, defense counsel raised a Batson claim based on the state's use of peremptory challenges to excuse black jurors, Brown, Jones, and Jackson. Defense counsel entered a Batson challenge to Ms. Brown, and the court asked him if he had seen a pattern. Defense counsel responded that he had seen a pattern for 16 years, and that "there wasn't one single thing that she (the juror) said which would give her a reason for the State to cut her." Without ruling on whether the defense had made a prima facie case of racial discrimination, the court stated, "I'll first allow Mr. Wollf (the state) to respond to your challenge." The prosecutor then stated, *526 "[y]our Honor, on at least three occasions she seemed to be nodding off. I don't know if she was disinterested or if she's just very elderly and it's late in the day, but she was nodding off. That's my reason." After hearing the state's proffered explanation, the trial court ruled, "[y]our challenge is denied and your objection is noted for the record. The Court has seen no pattern whatsoever with regard to excusal of minority or African American jurors in this particular case."
Defense counsel also entered a Batson challenge to Mr. Jones. The court said nothing, and the prosecutor replied, "[w]ell, besides the fact that he was inconsistent in his statements about whether he could judge people or whether he couldn't judge people, he was forty-five minutes late for court. He shows up in blue jeans with holes in them. He's got an earring. He's single with two kids. He's irresponsible and late for court. He is not the type of person that can take an armed robbery case seriously, in my opinion." Defense counsel argued that the state accepted a juror who was wearing blue jeans, and another juror who was wearing a blue jean top. He further stated that the prosecutor misunderstood what the juror meant when he said he could not judge people. The court stated, "[t]he state has enunciated race neutral reasons for excusing Mr. Jones. Some of those reasons include his tardiness in returning to court amongst others, and the Court finds those reasons sufficient. Your challenge is denied. Your objection is noted for the record."
Defense counsel made another Batson challenge to Ms. Jackson, and said, "[t]he reason is despite the fact that he accepted Ms. Holmes, there have been three other black jurors, he's cut them all." The state responded, "[s]he says that she's going to be distracted because her husband is in the hospital. It may not rise to the level of a cause but I want my jurors paying attention to my witnesses and my case. I've got the burden here. I'm putting on all the witnesses. Counsel doesn't have to put on anybody. I want people paying attention to my case and she's distracted." The court overruled this Batson objection, finding that the state had enunciated a race neutral reason for excusing Ms. Jackson.
Defendant now argues that the trial court erred in accepting these explanations as race neutral. In previous cases, these same basic explanations have been found to be race neutral. This court has held that perceived hostility, lack of interest, and unresponsiveness are race neutral reasons to exclude prospective jurors. State v. Williams, 545 So.2d 651 (La.App. 5 Cir. 1989), writs denied, 556 So.2d 53 (La.1990). Also, the fact that a juror was asleep was found to be a facially race neutral reason for exclusion. State v. Touissant, 98-1214 (La.App. 5 Cir. 5/19/99), 734 So.2d 961. In accord, see State v. Sanders, 97-892 (La. App. 5 Cir. 3/25/98), 717 So.2d 234, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
Courts have also found comments on a person's appearance to be race neutral reasons to exclude prospective jurors. In Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995), the Supreme Court found that the prosecutor's proffered explanation that he removed a juror because he had long, unkempt hair and a beard to be race-neutral, reasoning that the wearing of a beard is not a characteristic which is peculiar to any racial group. See also State v. Jones, 98-842 (La.App. 5 Cir. 2/10/99), 729 So.2d 57 and State v. Banks, 96-652 (La.App. 5 Cir. 1/15/97), 694 So.2d 401.
In the present case, the trial judge was in the best position to observe the entire voir dire and thus, to make the most informed *527 decision as to whether the state used its peremptory challenges in a discriminatory manner. We find that the trial judge did not abuse his discretion in deciding that the prosecutor's explanations were race neutral and in thereafter denying defendant's Batson claims. The arguments raised by defendant in this assigned error lack merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assigned error, defendant challenges the sufficiency of the evidence used to convict him of armed robbery. He specifically argues that there was no evidence which corroborated the victim's allegation that he was armed with a gun during the robbery. To support his argument, defendant points out that a gun was never found in his possession or in the surrounding area.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
In the instant case, defendant was convicted of armed robbery. That offense is defined in LSA-R.S. 14:64 as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."
At trial, Ms. Bayard testified that defendant came into Mr. Ed's Deli and tried to con her out of $20.00. When Ms. Bayard refused to give him the desired $20.00, defendant moved his jacket back with his right hand and showed her a gun tucked in the right side of his waistband. Bayard testified that she gave defendant the $20.00 after she saw the gun because she was scared. Ms. Bayard identified defendant at the scene of the crime and in court as the man who robbed her.
In the present case, the jury was presented with conflicting testimony regarding whether defendant possessed a gun. They heard the victim's testimony that defendant had a gun as well as other testimony that defendant was not armed with a gun. The jury heard the defense contention that the victim's testimony was uncorroborated. After hearing the conflicting testimony and evaluating the credibility of the witnesses, the jury found defendant guilty of armed robbery. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of the witnesses will not be re-weighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052. In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the court, is sufficient to support a conviction. State v. Myers, 98-899 (La.App. 5 Cir. 5/19/99), 737 So.2d 255.
Based on the foregoing discussion, we believe that a rational trier of fact, accepting Ms. Bayard as credible, could have found that she was robbed by defendant while he was armed with a gun. Accordingly, we reject the arguments raised by defendant in this assignment of error and find that the evidence at trial was sufficient under the Jackson standard to support defendant's conviction.

ASSIGNMENT OF ERROR NUMBER THREE
In this assignment, defendant complains that the trial court erred in *528 refusing to conduct a hearing on his amended motion to suppress the identification.
Prior to trial, defendant filed a motion to suppress identification. The state filed an objection, contending that defendant failed to allege facts that would require the granting of relief, as provided by LSA-C.Cr.P. art. 703(E)(1). Defendant then filed an amended motion to suppress evidence of identification, alleging that the Jefferson Parish Sheriffs Office deputies who investigated the case improperly suggested to Ashley Bayard that defendant was the perpetrator of the crime which rendered her show-up identification a violation of the Fifth and Fourteenth Amendments to the United States Constitution. On July 9, 1998, at a motion hearing, defendant's new attorney told the judge he was prepared to go forward with his motion to suppress identification. The state argued that there was no formal identification procedure, no physical line-up, and no photographic identification procedure. The state contended that there was only a show-up identification which was already testified to at the preliminary hearing and, therefore, the state submitted the matter to the court on that previous testimony. Following the arguments of counsel, the court denied defendant's motion to suppress identification. Defendant now challenges the trial court's refusal to conduct a hearing on the amended motion to suppress.
We find that any error in the trial court's refusal to conduct a hearing on the amended motion to suppress can be deemed harmless. Although it was not a suppression hearing, there was a pre-trial hearing on April 23, 1998, at which time Deputy Curtis Matthews testified about the investigation into the armed robbery at Mr. Ed's Deli. Officer Curtis stated, among other things that, after defendant was apprehended, Ms. Bayard exited the business and advised officers that the subject in custody was the man who had robbed her. Defense counsel had the opportunity to cross-examine this witness.
Moreover, there is no evidence in the record to suggest that the identification was suggestive or unreliable. In fact, identification was not even an issue at trial as defense witnesses testified that defendant was the man who went into Mr. Ed's Deli and tried to con money. The main issue at trial was whether defendant was armed with a gun. Given these circumstances, we cannot say that defendant was prejudiced by the trial court's refusal to conduct a hearing on the amended motion to suppress. This assigned error is likewise without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
The issues defendant raises in assignments of error numbers two and three were raised in his motion for a new trial. By this assignment, defendant contends that the trial court erred in denying his new trial motion for the reasons enumerated in those assignments. Having found defendant's second and third assigned errors to be without merit, we likewise conclude that the trial judge did not err in denying defendant's motion for new trial. This assigned error is without merit.

ASSIGNMENT OF ERROR NUMBER FIVE
By this assignment, defendant argues that the trial court erred in finding him to be a habitual offender. Within this general argument, defendant sets forth several issues. Each will now be individually addressed. Nolo Contendere Plea
Defendant contends that the multiple offender bill of information was legally defective because it stated that the defendant *529 pled guilty in Florida case number 92-885, even though defendant, in fact, entered a plea of nolo contendere in Florida. Defendant also claims that it is unclear whether a plea of nolo contendere in Florida can be considered a conviction and whether it can be used for habitual offender purposes in Florida. We find no merit to these arguments.
In State v. Royal, 527 So.2d 1083 (La. App. 1 Cir.1988), writ denied, 533 So.2d 15 (La.1988), the appellate court addressed a similar argument and concluded that defendant could be adjudicated a second felony offender based on his plea of nolo contendere in a Florida court. The court reasoned as follows:
La.Code of Crim.P. art. 552(4) specifically provides that:
... A sentence imposed upon a plea of nolo contendere is a conviction and may be considered as a prior conviction and provide a basis for prosecution or sentencing under laws pertaining to multiple offenses ... (Emphasis added)
Further, it has been held by the Louisiana Supreme Court that a plea of nolo contendere is tantamount to an admission of guilt. Louisiana State Bar Ass'n v. O'Halloran, 412 So.2d 523, 525 (La.1982); also see, State v. Brown, 490 So.2d 601 (La.App. 2d Cir.1986). In support of his position, defendant relies upon language in Louisiana State Bar Ass'n v. Connolly, 206 La. 883, 20 So.2d 168 (1944), to the effect that a plea of nolo contendere is not technically a plea of guilty. Defendant has misconstrued the holding of Connolly. Although Connolly does include the language cited by defendant, the court goes on to hold with respect to a plea of nolo contendere, that it is in substance a plea of guilty, if accepted by the court, except as to civil matters based on the same facts. Under La.Code of Crim.P. art. 552(4), a plea of nolo contendere clearly is to be considered as a conviction within the meaning of the habitual offender statute, i.e. La.R.S. 15:529.1 [footnote omitted].
Based on the foregoing rationale, we find that the multiple offender bill was not defective and further that the trial judge did not err in finding defendant to be a second felony offender based on his plea of nolo contendere in a Florida court.[5]

Unreasonable Delay
Defendant also argues that there was an unreasonable delay in the multiple offender proceedings.
While the multiple offender statute, LSA-R.S. 15:529.1, does not impose a prescriptive period, our jurisprudence clearly indicates the state must file the information within a reasonable time after the prosecution knows that a defendant has a prior record. The rationale is based squarely upon the defendant's constitutional right to a speedy trial and that, upon conviction, he is entitled to know the full consequences of the verdict within a reasonable time. Any conclusion as to what constitutes a reasonable time must be determined on a case by case basis. State v. Broussard, 416 So.2d 109 (La. 1982); State v. Conrad, 94-232 (La.App. 5 Cir. 11/16/94), 646 So.2d 1062.
In the present case, defendant was convicted of armed robbery on July 18, 1998, and the original multiple bill was filed on February 17, 1999. The multiple offender hearing was conducted on January 6, 2000, approximately eighteen months after he was convicted and eleven *530 months after the filing of the multiple offender bill. We find that any delay in conducting the multiple offender hearing was justified and not unreasonable given the circumstances of this case.
The record indicates that defendant failed to appear in court numerous times for the multiple offender hearing. The minute entries of December 10, 1998, January 11, 1999, and January 28, 1999, indicate that defendant did not appear in court for the multiple bill hearing. On February 18, 1999, defendant denied the allegations of the multiple bill. On March 12, 1999, defendant failed to appear in court. On April 1, 1999, defendant filed a notice of objection to the multiple bill and requested a continuance of the multiple bill hearing. Defendant failed to appear in court on May 6, 1999, and May 10, 1999, for the multiple offender hearing. Defendant denied the allegations of the amended multiple bill on May 27, 1999. On June 10, 1999, the state filed the amended multiple offender bill of information. On July 22, 1999, defendant filed a notice of objection to the amended multiple bill. On September 16, 1999, the multiple bill hearing was continued at the request of defendant. Defendant failed to appear for the multiple bill hearing on October 18, 1999, and requested a continuance. Defendant failed to appear for the multiple bill hearing on November 10, 1999, and December 16, 1999. The matter finally proceeded to hearing on January 6, 2000, at which time defendant was found to be a second felony offender.
Considering the fact that defendant failed to appear in court for the multiple bill hearing on numerous occasions, we find that the eleven to eighteen month delay was justified and was not unreasonable. This argument is without merit.

Florida Bill of Information
Defendant contends that there were no fingerprints on the back of the Florida bill of information used as the predicate offense as required by LSA-C.Cr.P. art. 871 and, therefore, the bill is defective.[6]
The state may establish that defendant was the same person who was convicted of a prior felony by expert testimony matching fingerprints of the accused with those in the record of prior proceedings. State v. Bailey, 97-302 (La.App. 5 Cir. 4/28/98), 713 So.2d 588, writ denied, 98-1458 (La.10/30/98), 723 So.2d 971. In the present case, at the multiple offender hearing, the state introduced certified court documents from Florida which included a page entitled "Fingerprints of Defendant." At the top of the page is case number 92-885 which links it to the bill of information. The page is certified at the bottom by the Clerk of Court. Lieutenant Adams testified that the fingerprints in the Florida court record matched those of defendant which she took prior to the multiple offender hearing. Therefore, even though the actual bill of information did *531 not contain fingerprints, we find that the trial court did not err in finding that the state proved defendant was the same person convicted of the felony in Florida case number 92-885.

Boykin Rights
Defendant also contends that because the state introduced Florida documents to prove the predicate offense, as opposed to actual transcripts, it is unknown whether defendant was informed of his constitutional rights prior to entering his plea. We have reviewed the Florida documents and find that they sufficiently show that defendant was advised of his constitutional rights prior to entering his plea.
At the multiple offender hearing, in addition to the expert fingerprint testimony of Lieutenant Adams, the state introduced a certified copy of the Florida bill of information; judgment; plea, waiver and consent; and fingerprints in case number 92-0885-C from the 14th Judicial District Court in Bay County, Florida, These certified court documents show that defendant pled nolo contendere to possession of cocaine, a third degree felony, on July 20, 1992, and that he was represented by counsel when he pled. The "Plea, Waiver and Consent" form shows that defendant was advised of his Boykin rights including the right against self-incrimination, the right to a jury trial, and the right to confrontation. It also states that defendant's plea was entered freely and voluntarily and that no one used force, threats, or promises to obtain his plea. The form also specifically indicates that defendant had the advice of counsel on all matters pertaining to the plea, including answers to questions asked by the court to defendant. This plea form was signed by defendant and his attorney as well as the assistant state attorney and the circuit court judge. We find that these documents introduced by the state sufficiently show that defendant was advised of his constitutional rights and knowingly and voluntarily waived those rights prior to entering his Florida plea.
Based on the foregoing discussion, we find no error in the finding of the trial court that defendant was a second felony offender. The state successfully proved by competent evidence defendant's prior felony conviction and also his identity as the same person who was convicted of the previous felony. The arguments raised by defendant in this assignment are without merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Our review reveals that the trial judge failed to advise defendant of the prescriptive period for post-conviction relief as is mandated by LSA-C.Cr.P. art. 930.8. Accordingly, we remand the matter to the trial court with instructions to advise defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. State v. George, 99-887 (La.App. 5 Cir. 1/4/00), 751 So.2d 973.
For the reasons set forth herein, we affirm defendant's conviction and sentence but remand the matter for further action in accordance with this opinion.
CONVICTION AFFIRMED, REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] It is noted that defendant's motion for appeal was premature when it was filed after conviction and sentence, but before the sentence as a multiple offender. However, that procedural defect was cured by the subsequent resentencing. State v. Balser, 96-443 (La.App. 5 Cir. 11/14/96), 694 So.2d 351.
[2] At trial, the state introduced evidence to show that defendant tried to con money from Dino's Pizza, Veterans Newsstand, and Tropical Tan and Smoothies immediately prior to committing the armed robbery at Mr. Ed's Deli. However, the details of those transactions are not pertinent to the instant appeal.
[3] The police were already in the vicinity in response to a suspicious person call made by an employee of one of the other businesses that defendant had tried to con.
[4] Defendant notes in his brief that at trial, he objected to the entire panel of 40 jurors having only four black persons. He states his objection to inadequate representation was denied. However, on appeal, he does not argue any error in that regard. Moreover, at trial, defendant argued that only three black persons were included in the panel, and the trial judge stated that the jury panel was chosen randomly in accordance with law. Defendant made no showing that there was systematic exclusion of black persons in the sources from which the jury venire was chosen. See LSA-C.Cr.P. art. 419A and State v. Ashworth, 97-2917 (La.11/25/97), 704 So.2d 228. He also did not file a motion to quash the jury venire.
[5] In the Royal case, the court, in footnote 1, noted that "in Florida a plea of nolo contendere is also construed for all practical purposes as a plea of guilty. Russell v. State, 233 So.2d 148 (Fla.App. 4th Dist.1970)."
[6] LSA-C.Cr.P. art 871 provides in pertinent part:

B. (1)(a) In every judgment of guilty of a felony ... the sheriff shall cause to be affixed to the bill of indictment or information the fingerprints of the defendant against whom such judgment is rendered.
(b)(i) Beneath such fingerprints shall be appended a certificate to the following effect:
"I hereby certify that the above and foregoing fingerprints on this bill are the fingerprints of the defendant, and that they were placed thereon by said defendant this ___ day of ___, ___."
C. The certificate required by Paragraph B of this Article shall be admissible in evidence in the courts of this state as prima facie evidence that the fingerprints appearing thereon are the fingerprints of the defendant against whom the judgment of guilty of a felony or one of the enumerated misdemeanors was rendered.