NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**08-1000**

STATE OF LOUISIANA

VERSUS

JAMIE HUBBARD

************

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF ST. LANDRY, NO. 06-K-1931-D
HONORABLE DONALD W. HEBERT, DISTRICT JUDGE

************

**JIMMIE C. PETERS
JUDGE**

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Michael G. Sullivan, Judges.

**AFFIRMED.**

**Earl B. Taylor
District Attorney
Jennifer M. Ardoin
Assistant District Attorney
Post Office Drawer 1968
Opelousas, LA 70571
(337) 498-0551
COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, LA 70602**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **Jamie Hubbard**

PETERS, J.

A jury convicted the defendant, Jamie Hubbard, of aggravated rape, a violation of La.R.S. 14:42. Thereafter, the trial court sentenced him to serve life imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence. The defendant timely appealed his conviction, asserting three assignments of error. For the following reasons, we affirm the conviction in all respects.

The criminal charges arise from events which occurred at the home of P.A.[1] on the night of April 4, 2006. P.A.'s eleven-year-old daughter, Q.B, testified at trial that the defendant entered the home that night and forced her to have sex with him. In one of his assignments of error, the defendant asserts that the evidence was insufficient to support the jury's conclusion that he committed aggravated rape on Q.B.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody,* 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See Graffagnino*, 436 So.2d at 563, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

*State v. Freeman,* 01-997, pp. 2-3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580.

Furthermore,

> In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Johnson*, 00-1552 (La.App. 5 Cir. 3/28/01) 783 So.2d 520, 527, *writ denied*, 01-1190 (La.3/22/02), 811 So.2d 921. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *Id.* The credibility of the witnesses will not be re-weighed on appeal. *Id.*

---

[1]We use initials in compliance with La.R.S. 46:1844(W).

*State v. Dixon*, 04-1019, p. 12 (La.App. 5 Cir. 3/15/05), 900 So.2d 929, 936.

Louisiana Revised Statutes 14:42(A)(4) defines aggravated rape as it applies in this case as "a rape . . . where the . . . vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed . . . [w]hen the victim is under the age of thirteen years." The age element is not at issue in this appeal. Instead, the defendant asserts that the evidence does not demonstrate beyond a reasonable doubt that he and Q.B. engaged in the act of sexual intercourse on the night of April 4, 2006. We disagree.

Q.B. testified that on the night of April 4, 2006, her siblings had fallen asleep in the living room, but she remained awake watching late-night television. At some point that evening, she responded to a knock on the door and allowed the defendant entry into the house. She did so because she recognized him as her mother's friend.

According to Q.B., after the defendant entered the home he immediately began to inappropriately touch her. When she attempted to scream, he covered her mouth with one hand while removing her shorts and underpants with the other. He then unzipped his pants, forced her onto the sofa, and raped her—all the time holding his hand over her mouth. Q.B. testified that she could not escape the defendant's control and he only released her because he thought he heard a noise. The defendant left after warning Q.B. that he would kill her if she informed anyone of his actions. He returned to the house later the same night, entered without knocking, and attempted to apologize.

Q.B. testified that she informed her mother the next day that the defendant had been "touching on her," but did not specifically reveal the rape because of the defendant's threat. Two days later, in a discussion with Linda Gallow, one of her

teachers, Q.B. informed Ms. Gallow that the defendant had raped her. Ms. Gallow testified that Q.B. told her that a man named Jamie had climbed through her window and raped her while her mother occupied another room in the house. Ms. Gallow testified that Q.B. said she did not scream because the man held his hand over her mouth.

During the ensuing investigation, Q.B. provided the investigating officer with the unwashed shorts and underwear she had worn on the night of the rape. According to Carolyn Booker, a forensic scientist with the Acadiana Crime Lab, a mixture of blood and seminal fluid found on the crotch of Q.B.'s shorts matched the defendant's DNA. However, the blood stain on Q.B.'s underwear contained no seminal fluid and, therefore, could not be matched to the defendant.

Colleen Snyder, a nurse practitioner, testified that she performed the physical examination when Q.B. was brought into the emergency room on April 11, 2006. Ms. Snyder did not perform a rape kit evaluation because of the time delay between the rape and Q.B.'s appearance at the emergency room. She did relate the history provided to her and stated that Q.B. told her that she began to have abdominal pain on April 4 after being forced to have sex. Ms. Snyder drew blood from Q.B. to check for evidence of a gonorrhea, chlamydia, or syphilis infection, and the tests results were negative. She performed no internal examination of Q.B., but her external examination revealed no evidence of trauma. Ms. Snyder did not comment as to whether Q.B.'s hymen was intact.

In arguing on appeal that the evidence is insufficient to establish his guilt beyond a reasonable doubt, the defendant primarily asserts that the evidence is not sufficient to establish that he penetrated the victim. Although Q.B. responded in the

3

affirmative when the prosecution asked if the defendant had "put himself inside of you?" as well as to the question "did he rape you? Did he penetrate you?," the defendant argues in brief that these terms or phrases, without further explanation, fail to show "beyond a reasonable doubt, that [the defendant] put his penis inside of her." According to the defendant, the remainder of the evidence presented did not provide proof beyond a reasonable doubt of this essential element of the offense.

As one example of his position, the defendant points to the DNA evidence and Ms. Booker's acknowledgment on cross-examination that the seminal fluid found on Q.B.'s shorts could have been transferred to the shorts from a wet stain on other clothes in the hamper, had the person wearing the other clothes been sexually active with the defendant. He suggests in brief that the seminal fluid on Q.B.'s shorts was transferred from her mother's clothing in the hamper. However, in making this argument, he ignores Ms. Booker's testimony that other factors would play a part in this proposed scenario, as well as P.A.'s testimony that the sole sexual encounter she had with the defendant in her home occurred prior to the April 4 offense. If that be the case, there would have been no wet stain in the hamper to be transferred.

The defendant next asserts that Q.B.'s testimony at trial was so inherently inconsistent that it could not support his conviction. He points to the fact that Ms. Gallow testified that Q.B. told her that her assailant climbed through a window and raped her, a statement which Q.B. denied in her testimony. He also notes in brief the inconsistencies in the testimony of Officer Phyllis Pickney of the Opelousas Police Department, who investigated the offense, as to what Q.B. told her and what Q.B. testified to, particularly that Q.B. never told her that the defendant came back to the home a second time on the night of April 4.

4

While acknowledging the inconsistencies in the record, we note that Q.B.'s testimony concerning the rape itself is consistent with her comments to her teacher, the health care providers, and the investigating officers. Thus, when viewed in a light most favorable to the prosecution, the evidence was sufficient to establish beyond a reasonable doubt that the defendant penetrated Q.B. with his penis. Therefore, we find no merit in this assignment of error.

In a separate assignment of error, the defendant argues that the trial court abused its discretion in exempting both Q.B. and her mother from the rule of sequestration. We find no merit in this assignment of error as La.Code Evid. art. 615(A)(4) specifically excludes "[t]he victim of the offense, or the family of the victim" from the rule of sequestration. We do not agree with the defendant's argument that the use of "or" in La.Code Evid. art. 615(A)(4) instead of "and" suggests that the legislature intended that family members be exempted only in the absence of the victim, nor do we find any jurisprudence to support that argument.

In his final assignment of error, the defendant asserts that the trial court erred in including charges to the jury that included four improper responsive verdicts: guilty of molestation of a juvenile, guilty of attempted molestation of a juvenile, guilty of indecent behavior with a juvenile, and guilty of attempted indecent behavior with a juvenile. Specifically, he argues that these offenses were not responsive to aggravated rape in La.Code Crim.P. art. 814 as it read in 2006. However, when questioned by the trial court concerning the jury instructions and the verdict form, the defendant's counsel voiced no objection to either.

Louisiana Code of Criminal Procedure Article 801(C) provides that:

> A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before

5

the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefore shall be stated at the time of the objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.

As noted in *State v. Dossman*, 06-449, 06-450, pp. 14-15 (La.App. 3 Cir. 9/27/06), 940 So.2d 876, 885-86, *writ denied*, 06-2683 (La. 6/1/07), 957 So.2d 174,

In order to preserve an issue for appeal, a party must make a contemporaneous objection. Louisiana Code of Criminal Procedure Article 841(A) provides, in part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Louisiana courts have consistently recognized this as the contemporaneous objection rule, noting its dual purposes: "(1) to put the trial judge on notice of the alleged irregularity so that he may cure the problem and (2) to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection." *State v. Potter*, 591 So.2d 1166, 1169, n. 6 (La.1991), *writ denied*, 619 So.2d 574 (La.6/18/93) (*quoting State v. Thomas*, 427 So.2d 428, 432 (La.1982)). See also *State v. Bias*, 95-541 (La.App. 3 Cir. 1/31/96), 674 So.2d 265; *State v. Stracener*, 94-998 (La.App. 3 Cir. 3/1/95), 651 So.2d 463, *writ denied*, 97-0696 (La.11/7/97), 703 So.2d 1261.

In the absence of a contemporary objection, this issue may not be raised on appeal.

**DISPOSITION**

We affirm the defendant's conviction in all respects.

**AFFIRMED.**

**This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.**