811 So.2d 997 (2002)
STATE of Louisiana
v.
Billy Ray PERKINS.
No. 01-KA-1092.
Court of Appeal of Louisiana, Fifth Circuit.
February 26, 2002.
*998 Gwendolyn Kay Brown, Louisiana Appellate Project, Baton Rouge, LA, for Appellant, Billy Ray Perkins.
Paul D. Connick, Jr., District Attorney, Mickey S. deLaupCounsel of Record on Appeal, Terry M. BoudreauxAppellate Counsel, Assistant District Attorneys, Gretna, LA, for appellee, State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
JAMES L. CANNELLA, Judge.
The Defendant, Billy Perkins, appeals from the denial of his Motion to Quash the habitual offender bill of information.[1] We affirm in part, vacate one sentence and remand.
On June 3, 1998, the Defendant and co-defendant, William Anderson (Anderson), pled guilty to armed robbery and second degree kidnaping, violations of La.R.S. 14:64 and 14:44.1. Each man was sentenced to 30 and 15 years at hard labor, without benefit of parole, probation, or suspension of sentence. The Defendant's sentences were ordered to run concurrently with each other.
On March 17, 1999, under La. R.S. 15:529.1 the Jefferson Parish District Attorney's Office filed a habitual offender bill of information seeking to enhance the Defendant's armed robbery sentence as a second felony offender. The Defendant denied the bill of information. On January 6, 2000, Anderson filed a motion to quash the habitual offender bill of information, which the Defendant verbally adopted. On that day, the trial judge denied both motions to quash. Following the habitual offender hearing on July 13, 2000, the trial judge found that the State proved that the Defendant was a second felony offender, vacated his original sentence, and sentenced the Defendant to forty-nine and one-half years at hard labor, without benefit of probation or suspension of sentence.[2]
On appeal, the Defendant contends that the trial judge erred in denying the motion to quash the habitual offender bill of information.
The Defendant contends that the trial court should have granted the motion to quash the habitual offender bill of information because the State unreasonably delayed in filing it and in conducting the hearing. The Defendant claims that he was prejudiced by the delay because he did not know the full consequences of his guilty plea until he was sentenced as a second felony offender, approximately two years after his original sentence. The State responds that the Defendant was not prejudiced by the delay because he knew *999 that the State intended to file a habitual offender bill against him when he entered his guilty plea.
The habitual offender statute does not impose a prescriptive period for filing a bill of information. However, the jurisprudence holds that the State must file it "within a reasonable time after the prosecution knows that a Defendant has a prior felony record." State v. Broussard, 416 So.2d 109, 110 (La.1982). See also: State v. Conrad, 94-232 (La.App. 5th Cir.11/16/94), 646 So.2d 1062, 1063, writ denied, 94-3076 (La.4/7/95), 652 So.2d 1345. The rationale is based on the Defendant's constitutional right to a speedy trial and that, upon conviction, he is entitled to know the full consequences of the verdict within a reasonable time. Broussard, 416 So.2d at 110-111; Conrad, 646 So.2d at 1063. Any conclusion as to what constitutes a reasonable time must be determined on a case-by-case basis. Conrad, 646 So.2d at 1063. However, the proceeding to have a Defendant sentenced as a habitual offender must be completed before the Defendant serves the sentence which is to be enhanced. State ex rel. Williams v. Henderson, 289 So.2d 74, 77 (La.1974).
In Broussard, the Louisiana Supreme Court held that a thirteen-month delay between the original sentencing and the filing of the habitual offender bill of information was unreasonable because the state was aware of the defendant's prior convictions at the time of original sentencing. The court noted that by the time the state filed the habitual offender bill of information, the defendant had served approximately one year of his four-year sentence, was anticipating release on parole within a few months, and the state offered no explanation for the delay. Broussard, 416 So.2d at 110-111.
In State v. McQueen, 308 So.2d 752, 754-756 (La.1975), the Louisiana Supreme Court held that a three and one-half year delay in filing the bill of information after the defendant's sentencing was unreasonable when the state offered no explanation for the delay.
However, even lengthy delays may be found reasonable when justified by the circumstances of a particular case. In State v. Johnson, 00-1552 (La.App. 5th Cir.3/28/01), 783 So.2d 520, 529-530, this court held that the state had not unreasonably delayed in conducting the habitual offender hearing. There, the state filed the bill approximately seven months after Johnson was convicted, and the hearing was completed approximately eleven months later.[3] The court in Johnson held that the delay was justified because Johnson had failed to appear in court for the habitual offender bill hearing on numerous occasions. Id. at 530.
In the appeal by Anderson, we held that the delay in conducting the habitual offender proceedings was reasonable. State v. Anderson, 01-158 (La.App. 5th Cir.5/16/01), 788 So.2d 561. There, as in this case, the trial judge denied the motion to quash because the nineteen months delay between his conviction and the habitual offender hearing had been caused by valid continuances due to the absence of either Anderson, the Defendant or an attorney, or the inability to secure the presence of a fingerprint expert. In upholding the trial judge's ruling, we noted that Anderson knew of the state's intent to file a habitual offender bill even before he tendered his guilty plea to the underlying offense. State v. Anderson, 788 So.2d at 563.
*1000 The record reflects that both Anderson and the Defendant pled guilty and were sentenced on June 3, 1998. The habitual offender bill of information was filed against both Anderson and the Defendant on March 17, 1999, approximately nine months after they pled guilty. The habitual offender hearing began on January 6, 2000, but was continued by a defense motion. The hearing was held on July 13, 2000. On that date, the trial judge sentenced the Defendant as a second felony offender, approximately sixteen months after the habitual offender bill of information was filed.
At the hearing on the motion to quash, the State explained that it had delayed filing the habitual offender bill of information because of the difficulty in obtaining properly certified copies of the Defendant's predicate conviction and the supporting documents from another parish. Regarding the delays after the bill of information was filed, the State pointed out that the Department of Corrections had failed to transport to court either Anderson, the Defendant or both, on several occasions.
In denying the motion to quash on January 6, 2000, the trial court stated:
All right, the court is well aware of the multiple bills that were filed against Mr. Anderson and Mr. Perkins, and in fact they have been continued on a number of occasions. The court finds that on each occasion that they were continued, that the continuance was appropriate and that it was granted by the court for a valid basis. We never had all of the parties here. We either were missing an attorney, missing the Defendants, we couldn't get the latent print experts here for valid reasons, not just that they didn't want to proceed with the multiple [sic] hearing, but there were valid reasons for not proceeding. The court finds that there's no prejudice to Mr. Anderson or Mr. Perkins by reason of those delays.
The motion to quash is denied with regard to both Defendants.
(R., pp. 108-109).
Despite the Defendant's assertion to the contrary, the record reflects that he knew the consequences of his guilty plea on the date which he entered his guilty pleas. The record reflects that he was notified as he was entering his guilty plea, that the State intended to enhance his sentence. During the plea colloquy, the assistant district attorney stated, "It's the State's belief that Mr. Perkins is in fact a double bill, a two-time offender and should we gather that paper work [sic], we will file a multiple bill." (R., p. 81).
The record also reflects that the Defendant was aware of the enhanced sentence which he might receive. According to the waiver of rights form signed by him, the State would seek "no greater than a double bill" and the Defendant would receive "no greater than 49½ years on a double bill." (R., p. 52). Additionally, the trial judge told the Defendant during the plea colloquy that, "in the event the State proves that you are in fact a multiple felony offender, a second felony offender. [sic][t]he Court would give you the minimum sentence as a second felony offender, which in this case would be 49½ years." (R., p. 82). Therefore, the Defendant had notice that the State intended to file a habitual offender bill of information and he also knew the sentence which he would receive, if found to be a second felony offender.
The record reflects that the State requested numerous continuances. However, the State had difficulty in obtaining the necessary documents, and the Defendant was absent at many of the scheduled hearings. Before the bill of information was filed on March 17, 1999, the matter was set *1001 eight times. The State requested continuances on all of those days, indicating on two occasions that it "needed more time to prepare for trial." (R., pp. 9-16). After the habitual offender bill of information was filed, the matter was set approximately 20 times before the Defendant ultimately received his enhanced sentence on July 13, 2000. Of these scheduled hearing dates, the Defendant failed to appear approximately eleven times.[4] On the days the Defendant appeared, the matter was continued four times on the State's motion, twice on the Defendant's motion, and once on a joint motion by the State and defense.[5]
According to Broussard and its progeny, the inquiry is whether the delay in conducting the habitual offender hearing was unreasonable under the circumstances of the particular case. As with Anderson's case, we find that the delays were reasonable. The Defendant failed to appear on numerous occasions, and there were other circumstances not attributable to the State. Further, the Defendant was notified that the State intended to file the habitual offender bill of information, and he was notified of the enhanced sentence that he would receive. Thus, we find that the Defendant was not prejudiced by the delays in this case and that the trial court did not abuse its discretion in denying the motion to quash the habitual offender bill of information.
We have reviewed the record for patent errors, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198, 206; and find it necessary to remand for re-sentencing on the second felony determination.
The record reflects that the Defendant received an illegally lenient sentence since the trial judge imposed the enhanced sentence without benefit of parole. When a defendant is sentenced as a habitual offender, "[t]he penalty increase is computed by reference to the sentencing provisions of the underlying offense. Similarly, the conditions imposed on the sentence are those called for in the reference statute." State v. Taylor, 99-385 (La.App. 5th Cir.8/31/99), 743 So.2d 749, 754 (citing State v. Bruins, 407 So.2d 685, 687 (La. 1981); State v. Rowell, 98-780 (La.App. 5th Cir.2/10/99), 729 So.2d 71, 74). Since armed robbery provides that the sentence is to be imposed without benefit of probation, suspension of sentence, or parole, the trial judge should have restricted parole eligibility. See La.R.S.14:64 B.
La.R.S. 15:301.1, enacted by Acts 1999, No. 94, § 1 provides for amendment of a sentence to conform with an applicable statutory provision, if the court acts on its own motion or if the district attorney seeks the amendment. The statute provides:
A. When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, *1002 parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.
B. If a sentence is inconsistent with statutory provisions, upon the court's own motion or motion of the district attorney, the sentencing court shall amend the sentence to conform to the applicable statutory provisions. The district attorney shall have standing to seek appellate or supervisory relief for the purpose of amending the sentence as provided in this Section.
C. The provisions of this Section shall apply to each provision of law which requires all or a portion of a criminal sentence to be served without benefit of probation, parole, or suspension of sentence, or of any one of them, any combination thereof, or any substantially similar provision or combination of substantially similar provisions.
D. Any amendment to any criminal sentence as authorized by the provisions of this Section shall be completed within one hundred eighty days of the initial sentencing.
This Court has previously considered the above provision in similar situations, where the one hundred eighty-day time limitation set by the legislature to amend the sentence has already elapsed. In those cases, we found that the illegally lenient sentence cannot be acted upon because of the time limitation. See, State v. McCraney, 01-439 (La. App 5th Cir. 9/25/01), 798 So.2d, 227, 232; State v. Barroso, 99-1297 (La.App. 5th Cir.5/17/00), 762 So.2d 206, 216-217, writ denied, 00-1744 (La.App. 5th Cir.6/29/01), 794 So.2d, 821. However, on May 25, 2001, the Louisiana Supreme Court granted writs in State v. Williams, 00-1725 (La.5/25/01), 792 So.2d 743 for "briefing and argument on the retroactivity and scope of R.S. 15:301.1, including the limits it purports to place on State v. Jackson, 452 So.2d 682 (La.1984)." In that opinion rendered on November 28, 2001, it held that the appellate courts are authorized under C.Cr.P. art. 882 and the self-activating provisions of La.R.S. 15:301.1(A) to correct illegally lenient sentences, without regard to the time limits in La.R.S. 15:301.1. (Justice Pascal Calogaro dissenting.) In the decree in Williams, the Louisiana Supreme Court specifically overruled all appellate cases holding otherwise. Thus, we are mandated to vacate the sentence and remand the case for re-sentencing pursuant to Williams.
Second, we find that the commitment does not conform to the transcript, which reflects that the enhanced sentence is imposed without benefit of "good time" eligibility. In State v. Balser, 01-317 (La. App. 5th Cir.7/30/01), 792 So.2d 156, 160, this Court addressed the same issue. Citing State v. Lynch, 441 So.2d 732 (La. 1983), the Balser court remanded the case and ordered the trial court to amend the commitment to conform with the transcript. We note this error in order that it not be repeated after the re-sentencing.
Finally, the record reflects that the State intended to enhance the sentence for the armed robbery conviction. However, we note that the trial judge failed to state which of the two sentences was being enhanced. Since we must remand for re-sentencing, the trial judge should rectify this error at that time.[6]
*1003 Accordingly, the Defendant's convictions, his sentence for aggravated kidnaping and the finding that he is a habitual offender are all hereby affirmed. His enhanced sentence for armed robbery is vacated and the case is remanded for the trial court to resentence the Defendant on the second felony habitual offender determination in accordance with this opinion and to correct the other errors specified herein.
AFFIRMED IN PART, VACATED IN PART AND REMANDED.
NOTES
[1] This is the Defendant's second appeal. The first was dismissed for untimeliness and remanded to allow the Defendant to have his appeal reinstated. State v. Perkins, 00-KA-1899 (La.App. 5th Cir.5/26/01), (not designated for publication).
[2] Because the Defendant's convictions resulted from guilty pleas, the facts of the underlying incident were not presented in the record. The bill of information filed in this case alleges that the Defendant committed armed robbery and second degree kidnaping of Anthony Hanlon in Jefferson Parish on August 12, 1997. At the guilty plea colloquy, the Defendant stated that "I went to a car lot and I took a car from this man, and I took everything he had at gunpoint." (R., pp. 37, 84).
[3] Johnson was convicted of armed robbery on July 18, 1998, the habitual offender bill was filed on February 17, 1999, and the hearing was conducted on January 6, 2000. Id. at 529-530.
[4] The record contains two minute entries dated January 20, 2000. Based on the content of the minute entries, it appears that one of the minute entries may be for January 24, 2000. (R., pp. 30-31).
[5] The record reflects one additional continuance on a day when the Defendant was present, but does not indicate who filed the motion to continue.
[6] We also note that the record does not reflect that the Defendant was arraigned on the amended charge of second degree kidnapping. However, in the absence of an objection prior to the trial or the guilty plea, the error is waived. State v. Narcisse, 01-49 (La. App. 5th Cir.6/27/01), 791 So.2d 149, 152