852 So.2d 1075 (2003)
STATE of Louisiana
v.
Henry L. FISHER.
No. 03-KA-326.
Court of Appeal of Louisiana, Fifth Circuit.
July 29, 2003.
*1076 Paul D. Connick, Jr., District Attorney, Alan D. Alario, II, Terry M. Boudreaux, Assistant District Attorneys, Gretna, LA, for State.
Holli Herrle-Castillo, Marrero, LA, for defendant-appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
On February 22, 2000, the Jefferson Parish District Attorney filed a bill of information charging defendant, Henry Fisher, with possession with intent to distribute cocaine. LSA-R.S. 40:967(A). Defendant was arraigned on February 24, 2000, and pled not guilty.
Defendant filed various pre-trial motions, including a Motion to Suppress the Confession and a Motion to Suppress the Evidence. The court heard and denied those motions on April 10, 2000. A jury trial was held and the defendant was found guilty as charged.
On September 29, 2000, the State filed a habitual offender bill of information, alleging defendant to be a fourth felony offender. On October 12, 2000, defendant denied the allegations of the habitual offender bill.
Defendant filed a Motion for New Trial on December 4, 2000, which the trial court denied. Defendant waived statutory delays, and the trial court sentenced him to thirty (30) years at hard labor and a $50,000 fine. Defendant made an oral motion for appeal, which the judge granted. Defendant filed a written motion for appeal on January 9, 2001, and the judge granted it on January 17, 2001.
Defendant's retained attorneys filed a Motion to Reconsider Sentence on January 5, 2001. Those attorneys were thereafter allowed to withdraw as attorneys of record. The July 26, 2001 minute entry indicates the hearing on the motion to reconsider sentence was deferred until the day *1077 of the habitual offender hearing. However, it does not appear that the trial court ever ruled on it. The transcript of the habitual offender proceedings shows that the trial judge inquired as to whether he had ruled on a motion to reconsider sentence. Defendant's new counsel informed the judge that the motion to which he referred had been filed by defendant in proper person. The court denied the motion, along with all other pro se motions. The question of whether the court ruled on the July 5, 2001 motion is moot, since the motion pertained to defendant's original sentence, and that sentence was later vacated.
On January 5, 2001, defendant filed a Notice of Objections to Multiple Bill. Defendant filed a Motion to Quash Multiple Bill on March 5, 2001, challenging the validity of the predicate convictions alleged by the State. Although the record shows the motion was set for hearing, it does not appear that the trial court ruled on it.
A hearing on the habitual offender bill was held on December 13, 2001. On that date, the defendant made an oral motion to quash, arguing the hearing was not timely. The trial court denied the motion. The State elected to amend the habitual offender bill to allege two, rather than three, predicate felony convictions.
The judge found defendant to be a third felony offender. The judge vacated defendant's original sentence, and imposed an enhanced sentence of life imprisonment without benefit of parole, probation or suspension of sentence. Defendant objected to the imposition of a life sentence, arguing that the court did not employ the applicable version of the habitual offender statute. Defendant also made a timely oral motion for appeal. He filed a written motion for appeal on December 20, 2001. The trial court granted the appeal on January 8, 2002.

FACTS
Narcotics Detective John Louis of the Kenner Police Department testified that a confidential informant alerted him to narcotics trafficking involving defendant, Henry Fisher. Based on that information, Louis instituted an undercover investigation of defendant. He obtained defendant's cellular telephone number, and called him on January 7, 2000. Defendant agreed to sell Louis $600 worth of crack cocaine.
The two men arranged to meet between 5:00 and 5:30 p.m. on January 12, 2000, at Airline Highway and Filmore Street in Kenner. Defendant told Louis he would be driving a white BMW automobile with a temporary license plate. Louis waited for defendant in an unmarked police car at the prearranged place and time. Defendant arrived in a white BMW, and parked it outside of a trailer at 647 Filmore Street. Defendant and a child, later identified as defendant's son, entered the residence. Louis remained in his car. Minutes later, defendant exited the trailer alone and walked towards Louis' car, making beckoning motions with his arms. Defendant told Louis to "come here."
At that point, Louis radioed backup officers in the area and told them to detain defendant. Once that had been accomplished, Louis went to the trailer at 647 Filmore Street. He spoke with Michael Powers, defendant's brother-in-law, and the trailer's owner. Louis identified himself, and asked Powers for permission to search the residence. Powers consented to a search.
Sergeant Ronald Labarriere testified that he is a member of the Kenner Police Department's tactical service division and is a canine handler. Labarriere took a narcotics dog into the trailer. When they reached the bathroom, the dog signaled *1078 the officer that it detected drugs in the toilet tank. Labarriere lifted the tank's lid, and discovered several rock-like objects at the bottom. Detective Louis took possession of the rocks. He performed a field test, and it was positive for cocaine. The officers also seized defendant's cellular telephone. Defendant was placed under arrest. Michael Powers was not arrested.
At trial, Powers identified defendant as his brother-in-law. He testified that defendant arrived at Powers' apartment in his white BMW between 5:00 and 5:30, accompanied by his young son. Defendant sat on Powers' sofa briefly, then went into the trailer's bathroom. Less than a minute later, defendant exited the bathroom. He said he was going to "make a run," and asked Powers to watch his son while he was gone. Powers agreed, and defendant left the trailer. Shortly after defendant departed, police officers arrived at the trailer. They told Powers that they believed defendant had left something at the residence, and that they had defendant in custody. Powers testified that the officers asked to search his trailer, and that he gave his consent to a search. The officers ordered Powers to remain in his living room while they searched the premises. At trial, Powers denied knowing there was crack cocaine in his bathroom. He stated he did not put it there. He further stated that had he known the cocaine was in the toilet tank, he would not have allowed police to search the trailer.
Edgar Dunn, an expert in the field of chemical analysis, testified that he tests controlled dangerous substances at the Jefferson Parish Crime Lab. He stated that he examined samples from State's Exhibit 1, the rocks seized at Michael Powers' trailer. He testified that the samples were positive for cocaine base or crack cocaine. He further testified that the total weight of the cocaine was 13.25 grams.

DISCUSSION
Defendant now appeals alleging five assignments of error: 1) the trial court's failure to suppress the evidence, 2) the trial court's failure to grant mistrial, 3) the evidence was insufficient to sustain the conviction, 4) the trial court's failure to grant motion to quash the habitual offender bill, and 5) the trial court imposed an excessive sentence.
When issues are raised on appeal as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence. If the entirety of the evidence, including evidence that was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. State v. George, 95-0110, p. 6 (La.10/16/95), 661 So.2d 975, 978; State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Noil, 01-521, p. 12 (La.App. 5 Cir. 12/26/01), 807 So.2d 295, 305, writ denied, 02-0276 (La.10/25/02), 827 So.2d 1177. Based on the foregoing, assignment of error number three will be discussed first.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant argues the evidence presented at trial was insufficient to sustain a conviction of possession of cocaine with the intent to distribute.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a *1079 reasonable doubt. State v. Ortiz, 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Williams, 99-223, p. 6 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607.
The crime of possession with intent to distribute cocaine requires proof that the defendant knowingly and intentionally possessed the drug, and that he did so with the specific intent to distribute it. LSA-R.S. 40:967(A)(2); State v. Manson, 01-159, p. 16 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 761; State v. Snavely, 99-1223, p. 11 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, 958, writ denied, 00-1439 La.2/16/01), 785 So.2d 840. Guilty knowledge is an essential element to the crime of possession of contraband, and such knowledge may be inferred from the circumstances. State v. Manson, supra. Possession can be either "actual" or "constructive." State v. Brisban, 00-3437, p. 8 (La.2/26/02), 809 So.2d 923, 929.
A person not in physical possession of a drug may have constructive possession when the contraband is under the person's dominion and control. State v. Shieffler, 00-1166, p. 4 (La.App. 5 Cir. 2/13/02), 812 So.2d 7, 9, writ denied, 02-0712 (La.9/13/02), 824 So.2d 1188. The key factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession are the defendant's knowledge that illegal drugs were in the area, his relations with a person found to be in actual possession, the defendant's access to the area where the drugs were found, evidence of recent drug use by the defendant, the existence of drug paraphernalia, and evidence that the area was frequented by drug users. Id.; State v. Manson, 01-159 at pp. 6-7, 791 So.2d at 761.
The record does not show evidence of actual possession by defendant. It was Detective Louis' testimony that, although he made arrangements to buy cocaine from defendant, he had other officers detain defendant before any transaction took place. Detective Louis further testified that defendant did not have any drugs on his person at the time of his arrest. We must consider, then, whether the State proved defendant had dominion and control over the crack cocaine sufficient to support a finding of constructive possession.
Detective Louis testified he received information from a confidential informant that led him to believe defendant was trafficking narcotics. He telephoned a person he believed to be defendant, using a cell phone number he obtained in the course of his investigation. During their telephone conversation, defendant agreed to sell cocaine to Louis. Louis testified that he did not meet defendant in person prior to the telephone call. Defendant told Louis to meet him at Airline and Filmore Streets. Louis described to defendant what type of car he would be driving.
Defendant is related to Michael Powers, in whose residence the cocaine was found. More importantly, defendant had access to the area where the cocaine was found shortly before police discovered it. These facts prove guilty knowledge. Powers testified that he had no guests in his house other than defendant before the officers arrived, and that he did not place the cocaine in the toilet himself. The defendant also went into the bathroom almost immediately after arriving at the trailer, and then left the residence less than a minute after exiting the bathroom. Upon leaving the trailer, defendant seemingly recognized Louis' car, and attempted to motion to him with his hands.
*1080 Defendant argues the evidence points to Michael Powers as the guilty party in this case. In State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83, the Louisiana Supreme Court commented:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020. Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
Id.
Powers denied having had any knowledge there was cocaine in the toilet tank. His wife, the only other resident of the trailer, was at work when the officers arrived. He testified that, had he known there was cocaine on the premises, he would not have consented to a police search. The jurors apparently found his testimony credible.
Therefore, we find that, in the light most favorable to the prosecution, the evidence shows beyond a reasonable doubt that defendant possessed the cocaine. Further, although defendant does not explicitly raise it in brief, we will address the question of whether the State offered sufficient proof of defendant's specific intent to distribute the cocaine since it is interconnected with the foregoing issue. In State v. Hearold, 603 So.2d at 735, the Louisiana Supreme Court listed a series of factors that might give rise to a reasonable inference that a defendant had the specific intent to distribute a controlled dangerous substance:
(1)whether the defendant ever distributed or attempted to distribute the drug;
(2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of the drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
Mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no inference is possible. State v. Snavely, 99-1223 at p. 12, 759 So.2d at 958.
Because there was no exchange of drugs, and no expert testimony regarding the drug trade, the State's primary evidence of defendant's intent to distribute was the telephone call between Louis and defendant. Detective Louis testified that he received information about defendant's drug activity from a confidential informant. The informant gave Louis a telephone number where defendant could be reached. Louis testified that he spoke with defendant over the telephone, and arranged to buy $600 worth of crack cocaine. Louis testified that he never saw defendant until the time of his arrest. The two men arranged to meet at a specific date and time in the area of Filmore and Airline Highway. Louis told defendant he would be driving a red Rx7 automobile, and defendant said he would be in a white BMW with temporary plates. The telephone conversation was not recorded, so the reliability of those facts was dependent upon Louis' credibility.
Defendant argues there was no proof that he was the person with whom Louis spoke over the telephone. There was, however, circumstantial evidence to that *1081 effect. Defendant arrived at the agreed-upon location at the agreed-upon time, in the type of car he described to Louis. Defendant's ownership of the white BMW was established by the testimony of Victor Planetta, the owner of Auto World Finance. Defendant went inside of Michael Powers' trailer, then emerged and approached Louis' car, waving his arms as if attempting to flag down the officer. His actions indicate he intended to meet with Louis.
We find that the telephone call and the circumstantial evidence connecting the call to defendant was sufficient to prove intent to distribute cocaine. In accordance, we find the evidence was sufficient to sustain a conviction of possession of cocaine with the intent to distribute.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment, defendant argues the trial court erred in failing to suppress the cocaine evidence. He maintains that the evidence was seized pursuant to an unlawful arrest. Defendant filed a pre-trial Motion to Suppress the Evidence. Following a hearing, the trial court denied the motion.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. A search made without a warrant issued upon probable cause is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). One recognized exception is a search incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Davis, 02-1008, p. 9 (La.App. 5 Cir. 2/25/03), 841 So.2d 952, 960. In a search incident to a lawful arrest, the officer may search the suspect's person and the area within his immediate control in order to remove weapons and prevent evidence from being destroyed. Id.; State v. London, 01-1016, p. 7 (La.App. 5 Cir. 3/13/02), 815 So.2d 162, 165. An arrest is lawful when it is based on probable cause. State v. Davis, supra. Defendant argues that the officers did not have probable cause for an arrest at the time he was detained, and that the evidence seized following his arrest was inadmissible as "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
It is of no consequence when defendant was arrested in relation to the seizure of the cocaine, or whether there was probable cause for arrest. The officers were entitled to search the trailer based upon the consent of Michael Powers, the person who lived there. A consent to search by a third person is another recognized exception to the warrant requirement, when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Edwards, 97-1797, p. 11 (La.7/2/99), 750 So.2d 893, 901, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999).
It was undisputed that Michael Powers resided at 647 Filmore Street, the location of the search. Powers testified that officers asked for his consent to search the premises, and that he gave said consent. The State also produced a consent form signed by Powers. Therefore, we find this assignment of error lacks merits.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant complains that the trial court erred in denying his motion for a *1082 mistrial because Detective Louis testified to evidence of other crimes. It is noted that defendant did not base his mistrial motion on grounds of other crimes evidence. It is questionable whether he preserved the issue for appeal, according to LSA-C.Cr.P. art. 841, however, we will address this issue.
Defendant points to the following exchange between the prosecutor and Detective Louis:
Q. [prosecutor] Okay. And how close were you to the defendant at that time?
A. [Detective Louis] He was on the other side of Airline, I was on this side of Airline. It's a two-lane highwaywell, actually four lanes for Airline.
Q. Okay. So
A.  and a median, so he was here, and I was here (indicating).
Q. So, you all were across the highway from each other.
A. Yeah. There was no other people around me. I was parked like in the middle between two blocks, and I was just parked in the middle by a pay phone, and he was walking toward me down Taylor.
Q. Okay. Now, in response to the defendant beckoning you or calling you over, what did you do?
A. That's when I radioed to the other detectives to go ahead and take him down, because it wasthrough my investigation I learned that he carried weapons
Defendant objected to the officer's testimony and moved for a mistrial. Out of the jury's hearing, defense counsel argued that the mention of the gun constituted prejudicial hearsay. The judge responded that hearsay is not a valid basis for a mistrial motion. The judge nevertheless admonished the jury to disregard the officer's remark.
LSA-C.Cr.P. art. 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
....
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
LSA-C.Cr.P. art. 771 provides, in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
....
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A police officer is not a court official under the mandatory provisions of Article 770. State v. Ledet, 00-1103, p. 23 (La. App. 5 Cir. 7/30/01), 792 So.2d 160, 175, writ denied, 01-2451 (La.9/30/02), 825 So.2d 1185. However, an impermissible *1083 reference to another crime deliberately elicited by the prosecutor is imputable to the State, and therefore triggers the rule mandating a mistrial. State v. Sprinkle, 01-137, p. 20 (La.App. 5 Cir. 10/17/01), 801 So.2d 1131, 1144, writ denied, 01-3062 (La.10/25/02), 827 So.2d 1174, cert. denied, ___ U.S. ___, 123 S.Ct. 1358, 155 L.Ed.2d 200 (2003). In the instant case, there is no evidence in the record that the prosecutor deliberately elicited the information about defendant's reputation for carrying a gun. A mistrial was not required under Articles 770 and 771 absent a showing of a pattern of unresponsive answers or improper intent by the police officer. State v. Pickrom, 31,987, p. 13 (La.App. 2 Cir. 5/5/99), 732 So.2d 800, 809. Detective Louis' response does not seem to show improper intent. It appears his mention of defendant's reputation for carrying a weapon was intended as an explanation for his actions. Moreover, the testimony complained of was not part of a pattern of unresponsive answers. Rather, it was an isolated comment.
This Court has found that Article 770 does not apply unless the reference clearly constitutes a comment on other crimes committed by the defendant. State v. Sprinkle, 01-137 at p. 20, 801 So.2d at 1144. It is arguable that Louis' comment was not, in fact, a clear reference to another crime. Possession of a weapon is not a criminal offense unless, for instance, the person with the weapon is a convicted felon under LSA-R.S. 14:95.1. There was no mention in Louis' testimony that defendant was reputed to be carrying a gun illegally.
Although he apparently did not believe there was a violation of either Article 770 or Article 771, the judge admonished the jury. Admonishment by the court to the jury would be the proper remedy under Article 771, even if the testimony complained of was an improper other crimes reference. Therefore, we find that the trial court did not commit error by denying defendant's motion for mistrial.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant complains that the trial court erred in failing to quash the habitual offender bill of information, because the habitual offender hearing and sentencing were not held within a reasonable time of his original sentencing. He seeks to have this Court set aside the trial court's habitual offender ruling and sentence, and remand the case for re-sentencing.
The State filed the habitual offender bill on September 29, 2000. The defendant was apprised of the allegations in the bill on October 12, 2000. The trial court imposed defendant's original sentence on December 14, 2000. Minute entries show the habitual offender hearing was continued six times, and that all of the continuances were on the motion of the State or the court. Some of those were apparently due to the Department of Corrections' failure to transport defendant to court. On December 13, 2001, the habitual offender hearing was held. Defendant made an oral motion to quash, arguing he was prejudiced by the trial court's delay in holding the hearing. The court denied the motion, and proceeded with the hearing. The court ultimately found defendant to be a third felony offender.
The Habitual Offender Law does not impose a prescriptive period for filing a bill of information. However, jurisprudence holds that the State must file it "within a reasonable time after the prosecution knows that a Defendant has a prior felony record." State v. Broussard, 416 So.2d 109, 110 (La.1982). See also, State v. Perkins, 01-1092, p. 3 (La.App. 5 Cir. 2/26/02), 811 So.2d 997, 999, writ denied, 02-0929 *1084 (La.11/15/02), 829 So.2d 422; State v. Anderson, 01-158, p. 3 (La.App. 5 Cir. 5/16/01), 788 So.2d 561, 563. This rationale is based upon the defendant's constitutional right to a speedy trial and to know the full consequences of the verdict within a reasonable time. Any conclusion as to what constitutes a reasonable time must be determined on a case-by-case basis. State v. Broussard, 416 So.2d at 110-111; State v. Perkins, 01-1092 at p. 4, 811 So.2d at 999. However, the proceeding to determine the defendant's habitual offender status and enhanced sentence must be completed before the defendant serves the sentence the State seeks to enhance. State ex rel. Williams v. Henderson, 289 So.2d 74, 77 (La.1974).
There is no question that the habitual offender bill was timely filed. The State filed it prior to defendant's original sentencing. The hearing was held 12 months after the original sentencing, well within the 30-year term of imprisonment initially imposed. Upon denying defendant's oral motion to quash, the trial judge commented:
All right. Let the Record reflect that the bulk of the continuances in this case were at the request of the State because of the defendant's absence from the jurisdiction, because of the writs; one case because the sheriff's office was in the process of the moving. While the continuances were done by the State, I find that they were all done for good cause....
We find that the trial court did not err in denying defendant's motion to quash. Compare, State v. Perkins, supra, in which this Court found that a 16-month delay between the filing of the habitual offender bill and the completion of the habitual offender hearing did not prejudice the defendant. This Court agreed with the trial court's finding that the hearing was justifiably delayed by valid continuances due to the absence of either the defendant or an attorney. Perkins, 01-1092 at pp. 5-6, 811 So.2d at 1000. See also, State v. Anderson, supra, in which this Court affirmed a 19-month delay on similar grounds.
Based on the foregoing, we find this assignment of error lacks merits.

ASSIGNMENT OF ERROR NUMBER FIVE
Here defendant argues that his mandatory life sentence under LSA-R.S. 15:529.1 is constitutionally excessive, and that the trial court failed to comply with the provisions of LSA-C.Cr.P. art. 894.1 in imposing sentence. Defendant did not file a motion to reconsider sentence as to the habitual offender sentence, as prescribed by LSA-C.Cr.P. art. 881.1. Defendant did make an oral objection at the time of sentencing, arguing that the trial court should have used the newly amended sentencing provisions of the Habitual Offender Law rather than the provisions in effect at the time of the offense. Although he properly preserved that specific issue, he does not raise it on appeal. Generally, the defendant's failure to make a specific objection at the time of sentencing or to file a written motion to reconsider precludes review of a sentence on appeal. See, State v. Ewens, 98-1096, p. 10 (La.App. 5 Cir. 3/30/99), 735 So.2d 89, 96, writ denied, 99-1218 (La.10/8/99), 750 So.2d 179. However, this Court has routinely reviewed sentences for constitutional excessiveness even absent a defendant's compliance with Article 881.1. State v. Anderson, 01-789, p. 8 (La.App. 5 Cir. 1/15/02), 807 So.2d 956, 961, writ denied, 02-0569 (La.1/24/03), 836 So.2d 42. Therefore, we will consider defendant's claim of constitutional excessiveness.
*1085 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Munoz, 575 So.2d 848, 851 (La.App. 5 Cir.1991), writ denied, 577 So.2d 1009 (La.1991). It is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Williams, 01-1007, p. 11 (La.App. 5 Cir. 2/26/02), 811 So.2d 1026, 1032. However, if a trial court finds that an enhanced punishment mandated by LSA-R.S. 15:529.1 makes "no measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial court has the option and duty to reduce such sentence to one that would not be constitutionally excessive. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993).
The trial court imposed the habitual offender sentence as follows:
the Court is of the opinion that under 15:529.1, because it uses the word "shall," the Court has no discretion. The Court must ... sentence the defendant to imprisonment for the remainder of his natural life without benefit of parole, probation or suspension of sentence.
Defendant maintains that the trial court should have deviated downward from the minimum sentence in his case. He argues the trial judge was unaware that the jurisprudence allows the district court to deviate from the statutory minimum sentence, and that the sentence imposed was, therefore, unfair. He moves this Court to vacate his sentence and remand for re-sentencing, with instructions to the trial judge to consider whether defendant's circumstances warrant a downward departure from the mandatory life sentence.
A trial court may only depart from the mandatory sentence if it finds clear and convincing evidence that would rebut the presumption of constitutionality. State v. Cho, 02-274, p. 28 (La.App. 5 Cir. 10/29/02), 831 So.2d 433, 454, writ denied, 02-2874 (La.4/4/03), 840 So.2d 1213. The burden is on the defendant to rebut the presumption of constitutionality by showing:
[h]e is exceptional, which in this context means that because of unusual circumstances this Defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id. (quoting State v. Young, 94-1636, pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223). The Louisiana Supreme Court has cautioned that downward departures from the mandatory minimum sentences should be made only in rare cases. State v. Lindsey, 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343.
Defendant did not move the trial court to consider a lesser sentence under State v. Dorthey, supra. The trial judge was correct in stating that the Habitual Offender Law gives the sentencing court no discretion in cases where a life sentence is mandatory. His failure to mention Dorthey does not demonstrate that the judge was ignorant of the jurisprudence. He was simply not asked by defendant to address that issue. In any case, defendant does not show the special circumstances necessary to rebut the presumption of constitutionality of his life sentence.
*1086 This Court has held that mandatory life sentences for distribution of cocaine under the Habitual Offender Law are not constitutionally excessive. In State v. Robertson, 99-1029 (La.App. 5 Cir. 2/29/00), 756 So.2d 1148, 1149-1150, this Court affirmed the life sentence of a third felony offender whose underlying conviction was for possession of cocaine with intent to distribute. This Court cited the defendant's extensive criminal history.
At the time of the original sentencing in the instant case, the trial judge commented that he had reviewed defendant's pre-sentence investigation report and his extensive criminal record, and concluded that defendant, if released from prison, would likely commit another crime.
Based on the foregoing, we find this argument lacks merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990). The review reveals no errors patent in this case.
In accordance with the above, we affirm the defendant's conviction of possession with intent to distribute cocaine and the trial court's finding that defendant is a third felony offender. We further affirm the defendant's sentence of life imprisonment without benefit of parole, probation or suspension of sentence.
AFFIRMED.