896 So.2d 1172 (2005)
STATE of Louisiana
v.
Alan D. WRIGHT.
No. 04-KA-1038.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 2005.
*1174 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Paige Cline, Assistant District Attorneys, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA, and CLARENCE E. McMANUS.
JAMES L. CANNELLA, Judge.
The Defendant, Alan Wright, appeals from his conviction of possession of cocaine and his sentence of 10 years imprisonment at hard labor with a $50,000 fine. For the reasons which follow, we affirm and remand.
On March 20, 2001, the Jefferson Parish District Attorney filed a bill of information charging the Defendant with possession of 28 grams or more and less than 200 grams of cocaine, a violation of La. R.S. 40:967(F). The Defendant was arraigned on April 16, 2001 and pled not guilty.
The Defendant filed a Motion to Suppress Evidence on May 3, 2001. The trial judge heard the motion on August 23, 2001 and delayed his ruling to allow the parties to file memorandas. The trial judge denied the motion on April 25, 2002. The Defendant was tried by a twelve-person jury on August 19, 2003.
Agent Frank Horn[1] testified that he is a narcotics detective with the Jefferson Parish Sheriff's Office. On March 1, 2001, he received information from a confidential informant (C.I.) that a black man in his 30's and driving a rental car would be arriving at the parking lot of a certain *1175 McDonald's Restaurant at 10:15 p.m. for the purpose of selling crack cocaine.
Based on the information he received, Agent Horn set up surveillance in the parking lot of the McDonald's at the intersection of South Causeway Boulevard and Jefferson Highway in Metairie. He was in plain clothes, drove an unmarked vehicle, and was accompanied by the C.I. Backup officers were stationed in concealed positions in the neighborhood. At about 10:15 p.m., Agent Horn saw the Defendant, a black male, drive into the parking lot in a silver Chevrolet Monte Carlo automobile. The car had a temporary license. Agent Horn testified that Monte Carlos are commonly used by car rental agencies.
As was planned in advance, the C.I. approached the Defendant's car alone to tell him that Agent Horn wished to purchase some cocaine. The C.I. returned to Agent Horn and told him that there was a large amount of cocaine in the Defendant's car, but that the Defendant was nervous and did not want to meet with him. Instead, the Defendant wanted the C.I. to bring him the money. Agent Horn declined the Defendant's proposal.
Agent Horn contacted backup officers and told them to move in and stop the Defendant, informing them that the suspect was in possession of cocaine. Agent Horn and the C.I. then left the area.
Agent Joseph Lopinto testified that he waited in a parking lot a block away from the McDonald's. He was dressed in police clothes, with his badge visible. He was not in a position to see the interaction between the C.I. and the Defendant. When he heard, by way of an audio transmitter, the order to move in on the Defendant, Agent Lopinto drove to the McDonald's parking lot and blocked the Defendant's exit. He exited his car and ordered the Defendant to raise his hands. The Defendant, who was sitting in the driver's seat of the Monte Carlo, raised only his left hand. The Defendant appeared to Agent Lopinto to be using his right hand to handle something next to him in the center console. Agent Lopinto ordered the Defendant five or six times to raise his right hand. The Defendant finally complied.
When both of the Defendant's hands were visible to him, Agent Lopinto approached the Defendant's car. He instructed the Defendant to get out, because he was concerned that the Defendant might have a gun in the vehicle. Agent Lopinto testified that the Defendant exited the car and was handcuffed for safety reasons. Agent Lopinto advised the Defendant of his Miranda rights.[2] He handed the Defendant over to Detective Eddie Greer and returned to the Defendant's car to determine what it was that the Defendant had been touching. He thought he might find a gun in the vehicle. Instead, he discovered a large amount of what appeared to be crack cocaine. There was a pill bottle with individual rocks, along with larger slabs. Agent Lopinto continued to search the car and found a car rental contract bearing the Defendant's name.
Detective Greer and Sergeant John Ladd were also part of the surveillance team. Sergeant Ladd testified that he was in a position to see the activities in the McDonald's parking lot. He saw the Defendant's car enter the parking lot from Jefferson Highway. He could also see Agent Horn's car in the parking lot. Sergeant Ladd testified that he watched the *1176 C.I. get out of the car and walk to the Defendant's car. The C.I. stood for twenty to twenty-five seconds talking to the Defendant through the driver's side window. The C.I. then returned to Agent Horn's car and got in. Agent Horn advised him that the Defendant had refused to meet with him and that there was cocaine in the Defendant's car. When given the order to move in on the Defendant, Sergeant Ladd drove his car into the parking lot.
Detective Greer testified that Agent Lopinto turned the Defendant over to him after handcuffing him. Agent Lopinto informed Sergeant Ladd upon finding the cocaine in the vehicle and Sergeant Ladd placed the Defendant under arrest. Detective Greer performed a patdown search of the Defendant and recovered $1,494 in currency. Agent Lopinto also gave Detective Greer the substance that he had found.
Gregg Blaize (Blaize) testified that he is an employee of Enterprise Rent-A-Car. He identified State's Exhibit 5 as one of his company's standard rental agreements. Blaize further testified that the agreement was executed on February 15, 2001 for a silver Monte Carlo. The Defendant was listed on the document as the renter and the form contained a provision prohibiting anyone but the Defendant from driving the car.
Tom Angelica (Angelica) testified that he is a forensic scientist with the Jefferson Parish Sheriff's Office. The trial court accepted him as an expert in identification and analysis of controlled dangerous substances. Angelica testified that he tested the evidence seized in the Defendant's case. He found that State's Exhibit 2A was positive for crack cocaine and that its net weight was 33.04 grams. Angelica testified that State's Exhibit 2B consisted of 28 pieces of crack cocaine and that its net weight was 5.6 grams. The total net weight of both specimens was 38.64 grams.
At the close of testimony, the jury returned a verdict of guilty as charged. On September 4, 2003, the trial court sentenced the Defendant to ten years imprisonment at hard labor and a fine of $50,000. On that day the Defendant filed a Motion for Appeal, which was granted, and he assigns two errors.

ASSIGNMENT OF ERROR NUMBER ONE
The Defendant argues that the trial court erred in failing to suppress the evidence seized pursuant to a warrantless search of his vehicle following an illegal arrest.
The Fourth Amendment to the United States Constitution, and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. A search made without a warrant issued on probable cause is considered unreasonable unless said search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). One such exception is a search incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Tatum, 466 So.2d 29, 31 (La.1985). In a search incident to a lawful arrest, the officer may search the suspect's person and the area within his immediate control in order to remove weapons and prevent evidence from being destroyed. State v. Andrishok, 434 So.2d 389, 391 (La.1983); State v. Fisher, 03-326, pp. 10-11 (La.App. 5th Cir.7/29/03), 852 So.2d 1075, 1081, writ denied, 03-2545 (La.5/14/04), 872 So.2d *1177 510. An arrest is lawful when it is based on probable cause. State v. Raheem, 464 So.2d 293, 296 (La.1985); State v. Davis, 02-1008, p. 9 (La.App. 5th Cir.2/25/03), 841 So.2d 952, 960, writ denied, 03-0948 (La.11/7/03), 857 So.2d 516.
The Defendant argues that he was under "arrest" when Agent Lopinto removed him from the car and placed him in handcuffs. He contends that the arrest was not lawful, not based on probable cause, and that the evidence seized following his arrest should be suppressed. We disagree.
Although Agent Lopinto testified at the suppression hearing that he did not consider the Defendant to be under arrest when he removed him from his car and placed him in handcuffs, we find it unlikely that the Defendant would have considered himself "free to go" after Agent Lopinto had drawn his weapon, ordered him out of his car, and placed him in handcuffs. Nevertheless, we find that the arrest of the Defendant was based on probable cause and was lawful.
Probable cause to arrest exists when the facts and circumstances, either personally known to the arresting officer or of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Fisher, 97-1133 at p. 7, 720 So.2d at 1184. The standard for assessing probable cause is an objective one that must withstand the" `detached, neutral scrutiny of a judge.'" Fisher, 97-1133 at p. 8, 720 So.2d at 1184 (quoting State v. Flowers, 441 So.2d 707, 712 (La.1983)). The determination of probable cause must take into account the "practical considerations of everyday life on which ... average police officers can be expected to act." State v. Raheem, 464 So.2d 293, 296 (La.1985).
In addition to the facts testified to at trial, at the suppression hearing Agent Horn testified that he had dealt with this particular C.I. "a couple" of times in the past. By "a couple" he meant two or three times. He had found the C.I. to be reliable. The C.I. had given him reliable information in the past. Agent Horn testified that the C.I. contacted the Defendant by telephone and arranged the meeting by calling the purported narcotics dealer on a cellular telephone while Agent Horn listened to the conversation. Agent Horn testified that during that conversation, the C.I. said, "`I got a guy who wants a hundred dollars worth. Can you do it?'" The person to whom the C.I. was talking said, "`Yeah, no problem'" The C.I. asked, "`Where you want to meet?'" The response was, "`The McDonald's.'"
The evidence supports the finding that the officers had probable cause to arrest the Defendant. The C.I.'s veracity and reliability were demonstrated in the instant case by the Defendant's appearance at the time and place predicted by the C.I., in the type of car that the C.I. described. Moreover, the reliability of the C.I. was confirmed by Agent Horn. After meeting with the Defendant in the parking lot, the C.I. informed Agent Horn that the Defendant had cocaine in his car. Agent Horn relayed that information to Agent Lopinto who attempted to stop the Defendant. Upon ordering the Defendant to raise his hands, the Defendant continued to keep his right hand down, apparently fumbling with something, supporting the reasonable conclusion that he was in possession of something illegal, whether it was drugs or a weapon. In either case, we find that, *1178 based on the totality of the circumstances, Agent Lopinto had probable cause to arrest the Defendant.
The State also argues that the cocaine was legally seized under the "automobile exception" to the warrant requirement. That exception provides that once a lawful arrest has been made, a warrantless search of the arrestee's person and of the area within his immediate control is permissible in order to remove any weapons from his person and to prevent evidence from being destroyed. Chimel v. California, supra; State v. Joseph, 02-717, p. 3 (La.App. 5th Cir.6/27/03), 850 So.2d 1049, 1051. When the occupant of an automobile is arrested, the police may search the passenger compartment of the automobile as a search incident to the arrest. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); State v. Bergman, 04-435, p. 4 (La.App. 5th Cir.10/12/04), 887 So.2d 127, 130. Police may also examine the contents of any containers found within the passenger compartment, whether they are open or closed, since the arrest justifies the infringement of any privacy interest that the arrestee may have. New York v. Belton, 453 U.S. at 460, 101 S.Ct. 2860. The exception applies regardless of whether the suspect remains in the vehicle or has been removed by police. Thornton v. United States, 541 U.S. 615, ___, 124 S.Ct. 2127, 2131, 158 L.Ed.2d 905 (2004) ("the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle.").
Based on our review of the record and the totality of the evidence, we find that Agent Lopinto's initial stop of the Defendant's vehicle and detention of the Defendant were based on probable cause to believe that the Defendant possessed cocaine. Thus, the officers' seizure of cocaine from the Defendant's vehicle did not violate the Defendant's Fourth Amendment rights, since the search was valid as a search incident to a lawful arrest under the automobile exception. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
The Defendant argues that the trial court erred in refusing to grant his motion for a mistrial. More particularly, the Defendant argues that the State's attempt to qualify Lieutenant Bruce Harrison as an expert in cocaine distribution, and to have him testify as to the value of the seized cocaine, when the charged offense was possession of cocaine, prejudiced the jury against the Defendant, entitling him to a mistrial.
The State called Lieutenant Harrison as a witness in its case in chief. After some preliminary questioning, the State asked the trial court to accept Lieutenant Harrison as an expert "in the use, packaging, distribution and value of controlled dangerous substances." Defense counsel objected, arguing that the Defendant was charged with possession, and that his charge had nothing to do with packaging or distribution. Out of the jury's presence, defense counsel moved for a mistrial.
At the conclusion of the bench conference, the trial court denied the motion for the mistrial and instructed the jury as follows:
Alright. The jury understands that the defendant is charged with possession of cocaine between 28 grams and 200 grams. Nothing else matters. I mean, in other words, he's not being charged *1179 with selling any kind of narcotics or anything like that. I know you all understand that, and accordingly, what we're going to do is limit the  I'm going to admit Detective Harrison  Lieutenant Harrison as an expert in the value of narcotics. Okay. So, you can limit his expertise to that field. Okay.
Defense counsel made an ongoing objection.
Lieutenant Harrison subsequently testified that each of the 28 rocks of crack cocaine in the pill bottle in State's Exhibit 2 has a street value of between $10 and $20. The total value of those rocks would be between $280 and $560. The larger pieces of crack cocaine, which weighed a total of about 30 grams, would sell for between $800 and $1,200. Together, all of the cocaine seized from the Defendant was worth between $1,300 and $1,700.
The Defendant now contends that the trial court should have granted him a mistrial, or at least further admonished the jury. While we find the evidence lacks relevance, we do not find its admission grounds for a mistrial.
La.C.Cr.P. art. 770 lists four instances in which prejudicial remarks may trigger a mistrial. The admission of irrelevant evidence is not among them. Moreover, a verdict will not be reversed because of the erroneous admission of irrelevant evidence if the reviewing court, assuming that the damaging potential of the improperly admitted evidence is fully realized, determines that the error was harmless beyond a reasonable doubt. Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986); State v. Wille, 559 So.2d 1321, 1332 (La.1990). "Reversal is mandated only when there is a reasonable possibility that the evidence might have contributed to the verdict." State v. Wille, 559 So.2d at 1332 (citing Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). Factors to be considered include the importance of the evidence to the state's case, the presence or absence of additional corroboration of the evidence, and the overall strength of the state's case. State v. Wille, supra.
Any evidence regarding distribution of cocaine would have been irrelevant to the Defendant's prosecution for possession. Similarly, Lieutenant Harrison's testimony regarding the value of the seized cocaine was not necessary to the State's case. The State was not required to prove value to obtain a conviction. However, even if the testimony was irrelevant, any error by the trial court in admitting the evidence does not mandate reversal of the conviction. There was clearly enough evidence to prove the Defendant guilty of the charged offense beyond a reasonable doubt, without Lieutenant Harrison's testimony of the value of the drugs. We do not find that the disputed evidence contributed to the verdict. Moreover, the trial court did admonish the jury that the Defendant was charged only with possession of cocaine. See, State v. Rochon, 98-717 (La.App. 5th Cir.3/10/99), 733 So.2d 624; State v, Major, 02-0133 (La.App. 4th Cir.10/2/02), 829 So.2d 625, writ denied, 03-0267 (La.2/20/04), 866 So.2d 825.
Based on the foregoing, we find that the trial court did not err in denying the Defendant's mistrial motion. This assignment of error lacks merit.

ERRORS PATENT DISCUSSION
The record was reviewed for errors patent. La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. *1180 Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). Upon review, we find that the Defendant was not properly advised of the post-conviction prescriptive period as provided in La.C.Cr.P. art. 930.8.
Although the minute entry provides otherwise, the transcript of the sentencing indicates that, at the time of sentencing, the trial judge informed the Defendant that, "You have two years to file for post conviction relief." The article provides that a defendant has two years "after the judgment of conviction and sentence has become final" in which to file a post-conviction relief application.
Therefore, we instruct the trial court to send appropriate written notice to the Defendant of the correct statement of the law regarding the prescriptive period for post conviction relief and to file written proof in the record that the Defendant received the notice.
Accordingly, for the reasons set out above, the Defendant's conviction for possession of cocaine under La. R.S. 40:967(F) and his sentence to ten years imprisonment at hard labor with a $50,000 fine are affirmed. The case is remanded to the district court to provide proof in the record of the Defendant's receipt of appropriate notice, under La.C.Cr.P. art. 930.8, of the prescriptive period for post conviction relief.
AFFIRMED AND REMANDED.
NOTES
[1] The officer's name is alternately spelled "Horn" and "Horne" in the record.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).